**BRITISH STEEL CORPORATION and British Steel Corporation, Inc., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**Court Nos. 83-5-00732, 83-7-01032.**

United States Court of International Trade.

Oct. 21, 1983.

**12.** *Atlantic Sugar, Ltd., et al. v. United States*, 2 CIT 295 (1981).

Steptoe & Johnson Chartered, Washington, D.C. (Richard O. Cunningham, Charlene Barshefsky and Alice L. Mattice, Washington, D.C., on brief), for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Lit. Branch, Washington, D.C., and Sheila N. Ziff, New York City, on brief, for defendants.

NEWMAN, Judge:

### Introduction

Plaintiffs have instituted this action for review of the final affirmative countervailing duty determination of the International Trade Administration of the Department of Commerce ("ITA"), made pursuant to 19 U.S.C. § 1671d, respecting certain stainless steel imports from the United Kingdom. Presently before the Court for determination are defendants' motion to dismiss Court No. 83–5–00732 for lack of jurisdiction on the ground that the action was filed prematurely; and plaintiffs' cross-motion for an order consolidating this action with Court No. 83–7–01032 and directing defendants to file their answer in the consolidated actions within fifteen days after the disposition of these cross-motions. Alternatively, if defendants' motion to dismiss is granted, plaintiffs seek an order requiring defendants to serve their answer to the complaint in Court No. 83–7–01032 within fifteen days after the disposition of these cross-motions.

### The Facts

On April 20, 1983, ITA issued its final affirmative countervailing duty determination pursuant to 19 U.S.C. § 1671d, which was published in the Federal Register on April 27, 1983. 48 F.R. 19,048–054. On May 18, 1983 plaintiffs commenced the instant action contesting that determination.

Subsequently, ITA issued its final countervailing duty order, effective June 23, 1983, respecting stainless steel plate from the United Kingdom. That order was published in the Federal Register on June 23, 1983. 48 F.R. 28690.[1]

Thereafter, on July 21, 1983 plaintiffs commenced a second lawsuit (Court No. 83–7–01032) challenging ITA's countervailing duty order of June 23, 1983, which action raises the identical substantive issues as that presented in the within case. Plaintiffs' complaint in Court No. 83–7–01032 alleges that such action was instituted "[a]s a precaution to insure technical compliance with the provisions of 19 U.S.C. § 1516a(2)(A)(ii)" (sic).

### Parties' Contentions

In support of their motion to dismiss, defendants argue that jurisdiction in this case must be predicated upon 28 U.S.C. § 1581(c), and that actions under that provision challenging an ITA final affirmative determination must be commenced within thirty days after the publication of a countervailing or antidumping duty *order* in accordance with 19 U.S.C. § 1516a(a)(2)(A)(ii). Therefore, according to defendants, since the first action (83–5–00732) was commenced on May 18, 1983, prior to the publication of the countervailing duty *order* of June 23, 1983, such action was filed prematurely and must be dismissed.

Plaintiffs insist that the time for commencement of the present action is governed by 28 U.S.C. § 2636(c), which specifies that the action must be commenced within thirty days after the date of the publication of the *determination* in the Federal Register. Inasmuch as this action was brought within thirty days after the publication of the final countervailing duty *determination* of April 27, 1983, plaintiffs maintain that this action was not filed prematurely.

### Opinion

The issue presented is whether an action contesting a final affirmative countervailing duty determination is properly instituted prior to the publication of the countervailing duty order.

Final affirmative countervailing duty determinations of the ITA and ITC are reviewable by the Court of International Trade under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c). An interested party may commence an action challenging the final affirmative determinations mentioned in § 1516a(a)(2)(B)(i) within thirty days after the date of publication in the Federal Register of a countervailing duty *order* based upon the determinations described in clause (i) of subparagraph (B). 19 U.S.C. § 1516a(a)(2)(A)(ii). There is no dispute that here, the action was filed within thirty days after the date the final affirmative determination was published in the Federal Register and prior to the publication of the countervailing duty order of June 23, 1983. Plaintiffs, however, argue that under 28 U.S.C. § 2636(c), this action would have been barred unless commenced within thirty days after the date of the publication of the final affirmative determination in the Federal Register. Thus, section 2636(c) states:

> (c) A civil action contesting a reviewable determination listed in section 516A of the Tariff Act of 1930, other than a determination under section 703(b), 703(c), 733(b), or 733(c) of such Act, is barred unless commenced in accordance with the rules of the Court of International Trade within thirty days after the date of the publication of such determination in the Federal Register.

It is apparent that as applied to the facts in this case, where the action was commenced within thirty days after the date of publication of the final affirmative determination, but prior to the publication of the

---

[1]. In this connection, on June 10, 1983 the International Trade Commission ("ITC") issued a final affirmative injury determination in the investigation of imports of stainless steel plate from the United Kingdom. On the same date, ITC rendered a final negative injury determination respecting imports of stainless steel sheet and strip from the United Kingdom.

countervailing duty order, there is an incongruity in the literal provisions of 19 U.S.C. § 1516a(a)(2)(A)(ii) and 28 U.S.C. § 2636(c).

■ The general rule of construction where conflict is found between two statutes is that the most recent provision must control as the latest expression of the legislative intent. *Ullman v. United States*, 1 Ct.Cust.Appls. 61, T.D. 31032 (1910). However, this rule is subject to recognized exceptions, and should never be applied except in a case where the repugnancy between the two statutes is irreconcilable. *Id.* at 62. A statute is to be construed with reference to other statutes *in pari materia* "by a general survey of the whole context, and the provisions are to be made to stand together if possible". *Id.* at 62. Consequently, in resolving the present issue involving statutes seemingly in conflict when applied to the present factual situation "it is the duty of [the Court] to try to harmonize the same so as to give each of them meaning and to bring about such a result as was reasonably within the contemplation of the legislature * * *". *Beaver Products Co., Inc. v. United States*, 17 CCPA 434, 437, T.D. 43878 (1930). *See also Zenith Radio Corporation v. United States*, 1 CIT 180, 185, 509 F.Supp. 1282, 1286 (1981), and cases cited.

■ While courts are ordinarily duty-bound to interpret statutes in accordance with their clear meaning, statutory clarity does not bar a court's consideration of legislative history where such history clearly indicates "that the Congressional intent differed from that manifested by the language used". *Zenith Radio Corporation*, 1 CIT at 184, 509 F.Supp. at 1286 and cases cited therein. As previously observed in *Haarman & Reimer Corporation v. Unit-*

*ed States, et al.*, 1 CIT 148, 151, 509 F.Supp. 1276, 1279 (1981), "[i]t is noteworthy that in the enactment of the Customs Courts Act of 1980, the Congress was particularly attentive to its predecessor act, the Trade Agreements Act of 1979", and that the two statutes are "companion measures" respecting the administration of the countervailing and antidumping laws.[2] Hence, I have no doubt that when enacting the Customs Courts Act of 1980, Congress was mindful of the time limitations upon judicial review prescribed by section 516A. Indeed, I cannot conceive of any expression of legislative purpose more explicit than that contained in H.R.Rep. No. 1235, 96th Cong. 2d Sess. 56 (August 20, 1980), U.S. Code Cong. & Admin.News 1980, p. 3767, which states that section 2636(c) "substantially restates the law set forth in section 516A of the Tariff Act of 1930, as added by the Trade Agreements Act of 1979". *See also* S.Rep. No. 466, 96th Cong., 1st Sess. 17 (December 7, 1979). And as Chief Judge Learned Hand wisely observed in *Federal Deposit Insurance Corp. v. Tremaine*, 133 F.2d 827, 830 (2d Cir.1943):

There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it.

Moreover, in *Peter Pan Fabrics Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960), Chief Judge Learned Hand admonished: "it is a commonplace that a literal interpretation of the words of a statute is not always a safe guide to its meaning."

Apart from a literal reading of the pertinent statutes, plaintiffs have called nothing

---

**2.** Significantly, the House Judiciary Committee, responsible for the Customs Courts Act, worked closely with the House Ways and Means Trade Subcommittee, which had been responsible for the Trade Agreements Act, in order to ensure that the Customs Courts Act did not conflict with the Trade Agreements Act provisions. As pointed up by Rep. Rodino, Chairman of the House Judiciary Committee:

[T]he Judiciary Committee has engaged in a continuing dialog with the Ways and Means Committee's Subcommittee on Trade to assure that H.R. 7540 is consistent with their work in American foreign trade policy, particularly in the area of imports.
126 Cong.Rec. H9342 (daily ed. September 22, 1980). *See also* H.R.Rep. No. 1235, 96th Cong. 2d Sess. 20, 29 (August 20, 1980).

whatever to the Court's attention which even remotely suggests that Congress intended in section 2636(c) to modify the time limitation specified in section 516A(a)(2)(A)(ii). While admittedly in section 2636(c) Congress provided that the time within which an action may be commenced runs from the date of publication of the "determination", nevertheless, as emphasized *supra*, Congress plainly manifested its intent that section 2636(c) merely restate the provisions of section 516A. It bears repetition to state that under section 516A(a)(2)(A)(ii) a final affirmative determination by the ITA or ITC may not be reviewed until after the publication of an *order* based upon the determination. *Cf. United States Steel Corp. v. United States,* 6 CIT ——, Slip Op. 83–65 (June 28, 1983). *See also Bethlehem Steel Corporation v. United States,* 7 CIT ——, 571 F.Supp. 1265 (1983).

■ In short, since ITA had not yet published a countervailing duty order when plaintiffs filed their summons, this action was commenced prematurely.[3]

Accordingly, it is hereby

ORDERED that defendants' motion to dismiss is granted; and plaintiffs' cross-motion to consolidate is denied.

Since defendants filed an answer to the complaint in Court No. 83–7–01032 on September 26, 1983, plaintiffs' motion to limit defendants' time to answer the complaint in that action is denied as moot.

---

**3.** Had this action been filed within the time prescribed by 19 U.S.C. § 1516a(a)(2)(A)(ii), the Court would have jurisdiction to review the countervailing duty order and underlying final affirmative determination under 28 U.S.C. § 1581(c). Consequently, plaintiffs' reliance upon 28 U.S.C. § 1581(i) as a basis for this Court's jurisdiction is entirely without merit. The legislative history of section 1581(i) unequivocally shows Congress did not intend that section 1581(i) be used to circumvent the system of judicial review established under section 1516a. See H.R.Rep. No. 96–1235, at p. 48. See also *Royal Business Machines, Inc. v. United States,* 669 F.2d 692 (Cust. & Pat.App.1981).

As indicated *supra,* plaintiffs protected their rights by commencing a second action on July 21, 1983, within thirty days after publication of the involved countervailing duty order (Court No. 83–7–01032)—and that action, of course, remains pending.